UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MOSHE BERLIN,

                   Plaintiff,

       v.

JETBLUE AIRWAYS CORPORATION,
MARY DALY, KEVIN FLANAGAN,
PHILEMON EUBANKS and JOHN/JANE
DOES,

                   Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-1545 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Moshe Berlin, proceeding *pro se*, commenced the above-captioned action on March 13, 2018, against Defendants JetBlue Airways Corporation ("JetBlue"), Mary Daly, Kevin Flanagan, Philemon Eubanks, and John and Jane Does employees of JetBlue, alleging violations of his rights under state and federal law based on events occurring during a flight from Mexico to Florida. (Compl., Docket Entry No. 1.) Plaintiff alleges claims under the Air Carrier Access Act of 1986, Articles 17 and 19 of the Warsaw and Montreal Conventions, 42 U.S.C. § 1983, New York state law, and the New York City Administrative Code § 8-101 *et. seq.* (*Id.*)

Currently before the Court is a report and recommendation from Magistrate Judge Lois Bloom recommending that the Court deny Plaintiff's application to amend the Complaint (the "R&R"). (R&R 1, Docket Entry No. 65.) Plaintiff objects to the R&R, (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 66), and Defendants oppose Plaintiff's objections (Defs. Reply to Pl. Obj. to R&R ("Defs. Reply"), Docket Entry No. 67). For the reasons discussed below, the Court adopts the R&R and denies Plaintiff's application to amend the Complaint.

## I. Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts.

### a. Factual background

Plaintiff is a 47-year-old resident of Kings County, New York. (Compl. ¶¶ 2–3.) Originally from Israel, Plaintiff is "a member of the Jewish cultural community" and his first language is Yiddish. (*Id.* ¶ 3.) JetBlue is a corporation organized under the laws of New York with its principal place of business in Queens County. (*Id.* ¶¶ 11, 13.) Daly, Flanagan, and Eubanks are "agent[s], servant[s] and/or employee[s]" of JetBlue. (*Id.* ¶¶ 17–20.)

Plaintiff's claims arise out of an incident that occurred on March 22, 2016, aboard JetBlue flight number 1324 from Mexico City to Orlando, Florida (the "Flight"). (*Id.* ¶¶ 26–27.) Twenty minutes into the Flight, Plaintiff became "dehydrated and felt discomfort in his throat." (*Id.* ¶ 32.) To alleviate the discomfort, Plaintiff sought assistance from a flight attendant asking for "ICES."[1] (*Id.* ¶¶ 33–34.) An employee provided Plaintiff with a small cup of ice in response. (*Id.* ¶ 36.) Plaintiff's discomfort persisted and he sought further assistance. (*Id.* ¶ 37.) Unable to locate a flight attendant nearby, Plaintiff left his seat and began looking for assistance. (*Id.* ¶ 38.) After locating another flight attendant, Plaintiff made a second request for "ICES," while pointing to his throat. (*Id.* ¶ 39.) Without seeking clarification, the flight attendant alerted other staff that Plaintiff was saying "ISIS." (*Id.* ¶¶ 40–41.)

Plaintiff contends that after being alerted that Plaintiff was saying "ISIS", the other flight attendants began beating him, resulting in injuries to his left eye and teeth, (*id.* ¶ 42), and that

---

[1] Plaintiff alleges that in Yiddish, "ICES" signifies "to keep one cool." (Compl. ¶ 35.) Plaintiff contends that he expresses himself in a combination of Yiddish and English. (*Id.*)

during the incident, Flanagan used derogatory language against Jewish people, (*id.* ¶¶ 43, 45), and told Plaintiff that he had the authority to kill him, (*id.* ¶ 43). Plaintiff continued to request "ICES" during the alleged beating, which concluded when the flight attendants realized Plaintiff was asking for ice. (*Id.* ¶¶ 48–49, 51.) The employees then threw ice on the ground for Plaintiff to pick up with his mouth. (*Id.*) Plaintiff was detained by the flight attendants for the remainder of the flight, (*id.* ¶ 52), and was handed over to Customs and Border Protection, Transportation Security Administration ("TSA"), and the Orlando police department upon arrival in Florida, (*id.* ¶¶ 53–54).

Plaintiff alleges that he was interrogated for eight hours regarding the in-flight incident, (*id.* ¶ 55), and was subsequently prosecuted for interfering with flight crewmembers and attendants, (*id.* ¶ 56). Plaintiff was indicted in the Middle District of Florida for interfering with a flight crew member pursuant to 49 U.S.C. § 46504, (*see* Compl. ¶¶ 157, 177 (citing "Criminal Case 6:16-cr-67-Orl-18GJK")), and was ultimately found not guilty by reason of insanity and released from custody in February of 2017. (*See* Proposed Am. Compl. ("PAC") ¶ 98, annexed to Pl. Renewed Mot. for Pre-Mot. Conference as Ex. 1, Docket Entry No. 63-1; *see also USA v. Berlin*, No. 6:16-CR-00067 (M.D. Fla. terminated Apr. 4, 2018) (the "Criminal Prosecution").) Plaintiff alleges that he spent eleven months in prison. (*Id.* ¶ 57.) In addition, Plaintiff alleges that because of his arrest and detention, he missed his daughter's wedding, (*id.* ¶ 58), "lost his marriage" (*id.* ¶¶ 58, 61), and continues to suffer from psychological injuries, (*id.* ¶ 64), including nightmares and flashbacks, (*id.* ¶ 65).

### b. Procedural background

In the Complaint, Plaintiff asserted twelve separate claims under the Air Carrier Access Act of 1986, 14 C.F.R. § 382.141(a) (the "ACAA"), Articles 17 and 19 of the Warsaw and

Montreal Conventions, 42 U.S.C. § 1983, and common law.  (*Id.* ¶¶ 67–188).  At a pre-motion conference on April 27, 2018, the Court dismissed Plaintiff's section 1983 claims and his claims for negligent training, assault and battery, excessive force, disability discrimination, intentional infliction of emotional distress, abuse of process, malicious prosecution, and false arrest.  (Min. Order dated Apr. 27, 2018).  The Court allowed Plaintiff's claim for bodily injury under the Warsaw Convention and Montreal Convention (collectively, the "Montreal/Warsaw Conventions"), to proceed.[2]  (*Id.*)  Three days after the pre-motion conference, on May 1, 2018, Plaintiff retained counsel.  (Notice of Appearance for Chauncey D. Henry, Docket Entry No. 18.)

On June 12, 2018, Judge Bloom held an initial conference and issued a scheduling order, setting deadlines for any amendment of the pleadings and the completion of fact discovery, including a June 26, 2018 deadline to amend the pleadings or join other parties.  (*See* Order dated June 12, 2018 (citing Fed. R. Civ. P. 16(b)(3)(A).)  Plaintiff did not seek to amend the Complaint on or before the June 26, 2018 deadline.

On May 7, 2019, almost a year after the deadline to amend the pleadings, Plaintiff filed a request for a pre-motion conference in anticipation of his motion to amend the Complaint and a renewed request with a proposed amended complaint ("PAC") on May 3, 2019.  (Pl. Mot. for Pre-Mot. Conference, Docket Entry No. 56; Pl. Renewed Mot.)  Defendants opposed Plaintiff's requests, (Defs. Opp'n to Pl. Mot. for Pre-Mot. Conference, Docket Entry No. 58; Defs. Opp'n to Pl. Renewed Mot. ("Defs. Opp'n"), Docket Entry No. 64.)  The Court referred Plaintiff's motion to Judge Bloom for a report and recommendation.  (Order dated May 14, 2019.)

---

[2] Plaintiff also asserted separate claims for vicarious liability and psychological injuries which the Court did not dismiss and construed liberally as part of Plaintiff's claim for damages. (Min. Order dated Apr. 27, 2018.)

### c.    Proposed amended complaint

In the PAC, Plaintiff seeks to replead five claims — a section 1983 claim, a claim for negligent training under the ACAA, and state law claims for battery, intentional infliction of emotional distress, and false arrest.  (*See* PAC ¶¶ 106–20 (section 1983), 125–34 (negligent training), 135–40 (battery), 141–45 (intentional infliction of emotional distress), 150–155 (false arrest).)  Plaintiff also seeks to add a new claim for false imprisonment.[3]  (*See id.* ¶¶ 146–49.)

The PAC also includes additional factual allegations as to the chronology of events that occurred during the Flight and about JetBlue's policies regarding in-flight security and inflight medical events or emergencies.  (*Id.* ¶¶ 12–105.)  Plaintiff alleges that, at the time of his request for "ICES," he experienced "severe chest pains" that he "believed were the result of an oncoming heart attack or other severe previously undiagnosed cardiac condition."  (*Id.* ¶¶ 44–45.)  In addition to requesting "ICES" from a flight attendant, Plaintiff made "requests for medical attention," (*id.* ¶ 47), and Defendants "made no meaningful effort to . . . properly handle an inflight medical event or emergency," (*id.* ¶¶ 48–52).  Plaintiff collapsed in the aisle of the aircraft and was transported to the rear of the plane by the flight attendants where he awoke and made a renewed request for "ICES" before the flight attendants handcuffed him, tied his legs together, and beat him about his face, mouth, and body.  (*Id.* ¶¶ 53–72.)  When the plane landed in Florida, Flanagan made false reports to law enforcement that Plaintiff was carrying a "razor" and made bomb threats during the flight.  (*Id.* ¶¶ 85–95.)

In support of his section 1983 claim, Plaintiff alleges that Flanagan's statement "led to Plaintiff being criminally charged and prosecuted" because Flanagan falsely told law

---

[3]  Plaintiff does not seek to revive his prior claims for assault, malicious prosecution, malicious abuse of process, disability discrimination under the ACAA, or excessive force under the New York State Constitution.

enforcement that Plaintiff "stood up and charged at him," "threatened the use of a bomb," was "in possession of a 'razor' type disk or object aboard [the Flight]" and that "Plaintiff shouted profanities, threats of [d]eath to America and expressed violent religious ideologies associated with an Islamic state terrorist organization . . . that he knew at the time were completely false." (*Id.* ¶¶ 114–20.)

As to his claim of bodily injury due to negligence under Articles 17 and 19 of the Montreal/Warsaw Conventions, Plaintiff alleges that he experienced a medical emergency aboard the Flight and "suffered bodily harm related to or worsened . . . by the actions or inaction of [JetBlue employees]" who were "unprepared" to respond to his medical emergency. (*Id.* ¶ 123.)

In addition, in support of his negligent training claim under the ACAA, Plaintiff alleges that JetBlue employees inappropriately responded to his medical emergency and failed to properly train its employees as to how to "respon[d] to passengers with a disability, including persons with . . . mental and emotional disabilities" and "how to distinguish among the differing abilities of individuals with a disability." (*Id.* ¶ 127 (omissions in original).)

Further, in support of his false imprisonment and false arrest claims, Plaintiff alleges that he was confined against his will by flight attendants in the rear of the airplane during the Flight. (*See id.* ¶¶ 148–49.) In addition and in further support of his false arrest claim, Plaintiff alleges that "Defendants each 'played an active role in the prosecution' of Plaintiff after the incident by way of false statements or testimony in written or oral reports that later provided probable cause for Plaintiff[']s arrest and criminal prosecution." (*Id.* ¶¶ 152–54.)

### d. Judge Bloom's recommendations

Judge Bloom recommends that the Court deny Plaintiff's requests to amend the

Complaint because Plaintiff has not shown good cause to extend the amendment deadline.[4]

(R&R 7.)  In support of her recommendation, Judge Bloom found that (1) Plaintiff failed to

demonstrate the requisite diligence in seeking an amendment by the deadline, (*id.*), (2) granting

Plaintiff leave to file the PAC would unduly prejudice Defendants, (*id.*), and (3) in any event,

Plaintiff's proposed amendments would be futile, (*id.* at 12).

In denying Plaintiff's request to amend the Complaint as futile under Rule 15 of the

Federal Rules of Civil Procedure,[5] (*id.*), Judge Bloom found that the PAC would fail to state a

claim, even "accept[ing] as true all non-conclusory factual allegations therein, and drawing all

reasonable inferences in [P]laintiff's favor," because Plaintiff "fails to cure the deficiencies in the

original complaint."  (*Id.*)  Judge Bloom found that (1) "even if [P]laintiff's [section] 1983 claim

is not preempted by the Montreal/Warsaw Conventions," it would fail to satisfy the under-color-

of-state-law element, (*id.*), (2) Plaintiff's negligent training claim would fail because there is no

private right of action under the ACAA, (*id.* at 13), and (3) Plaintiff's common law tort claims,

including the newly added claim for false imprisonment, would fail as time-barred in light of the

---

[4] Judge Bloom denied Plaintiff's request for a pre-motion conference.  (R&R 1.)  No party objects to Judge Bloom's recommendation that the Court deny Plaintiff's request for a pre-motion conference.  The Court has reviewed this recommendation and, finding no clear error, the Court adopts it pursuant to 28 U.S.C. § 636(b)(1) and denies the request for a pre-motion conference.

[5] Because the Court finds that any amendment would be futile under Rule 15 of the Federal Rules of Civil Procedure, the Court does not address Judge Bloom's recommendations as to Plaintiff's diligence in seeking to amend the Complaint and any prejudice to Defendants.

one-year statute of limitations because Plaintiff was released from custody in February of 2017 and did not file suit until March 13, 2018, (*id.* at 14).

## II. Discussion

### a. Standard of review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### b. Plaintiff's objections to the R&R and Defendants' reply

Plaintiff objects to Judge Bloom's recommendation that the Court deny Plaintiff leave to amend the Complaint. (Pl. Obj. 4–5.) In his objection to Judge Bloom's finding of futility, Plaintiff "submits that the factual allegations within his proposed amended complaint are not futile." (*Id.* at 5.) In addition, Plaintiff asserts that his "state-law claims against [the] airline for false arrest and false imprisonment, in connection with [his] removal from [the] plane following [the] cross[-]country flight, were not preempted."[6] (Pl. Renewed Mot. 2 n.2.) Plaintiff does not otherwise address the futility findings by Judge Bloom. Plaintiff argues generally that Judge Bloom failed to assess his request for leave to amend the Complaint in light of the lower standard afforded to *pro se* plaintiffs and notes that courts are particularly inclined to grant a plaintiff leave to amend "where original pleadings have been drafted by [*pro se*] plaintiffs." (*Id.*)

In addition to arguing that no new facts justify the amendment, Defendants argue that Plaintiff's proposed amendment to his section 1983 claim is futile because it is "no less preempted than the claim previously dismissed," and "Plaintiff's own authority recognizes that an airline is not a 'state actor' for purposes of a [section] 1983 civil rights claim." (Defs. Opp'n 2–3.) Defendants also argue that Plaintiff's state law claims are all preempted and time-barred.[7]

---

[6] The parties also dispute whether Plaintiff has demonstrated good cause to amend under Rule 16 of the Federal Rules of Civil Procedure, (*see* Pl. Obj. 4–5; Defs. Reply 2), but as discussed *supra,* the Court declines to decide this issue. In addition, although counsel refers to the Flight as a cross-country flight, there is no dispute that the Flight originated in Mexico and landed in Florida. (*See* PAC ¶ 39.)

[7] In addressing the merits of Plaintiff's negligent training claim, Defendants argue that Plaintiff's counsel "has not, and cannot, obtain the training records need[ed] to support [this] claim," because "Plaintiff's counsel inexplicably declined to undertake the TSA background check needed to obtain sensitive security information." (Defs. Opp'n 2–3.) However, because the Court finds that the ACAA does not provide a private cause of action and therefore denies Plaintiff's application to amend the Complaint to add such a claim, the Court declines to address this argument.

### c. Plaintiff's proposed amendment to the Complaint would be futile

Having reviewed the PAC, the Court finds that Plaintiff's proposed amendments to reallege the previously dismissed section 1983 claim and the common law tort claims for battery, intentional infliction of emotional distress, and false arrest, and to add a new claim for false imprisonment would be futile because (1) Plaintiff's section 1983 claim and common law tort claims are preempted by the Montreal/Warsaw Conventions, (2) Plaintiff's common law tort claims are time-barred in addition to being preempted, and (3) the ACAA does not provide a private cause of action for Plaintiff's negligent training claim.

Although the Court acknowledges that typically, "a *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)), "[l]eave to amend may properly be denied if the amendment would be futile," *id.* at 140 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (citing *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (citing *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 386 (2d. Cir 2015). "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully

pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

> ### i. Plaintiff's proposed section 1983 claim and common law tort claims are preempted by the Montreal/Warsaw Conventions

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 ("Warsaw Convention") was "crafted during the Second International Conference on Private Aeronautical Law of 1929 in order to foster the growth of the nascent commercial airline industry."[8] *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). "The cardinal purpose of the Warsaw Convention . . . is to achieve uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999) (internal quotation marks omitted). The Warsaw Convention "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the [Warsaw] Convention." *Tseng*, 525 U.S. at 176. The Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international

---

[8] On April 27, 2018, at the pre-motion conference, the Court found that the Montreal/Warsaw Conventions governed Plaintiff's claims for his alleged injuries incurred in connection with the Flight and dismissed the claims asserted under section 1983 as well as his claims for assault, battery, intentional infliction of emotional distress, malicious abuse of process, malicious prosecution, and false arrest as preempted by the Montreal/Warsaw Conventions. (Min. Order dated Apr. 27, 2018.) Without seeking to set aside the Court's earlier decision, Plaintiff seeks to amend the Complaint to reassert his section 1983 claim, a claim for negligent training under the ACAA, and claims for battery, intentional infliction of emotional distress, and false arrest, and seeks to add a new claim for false imprisonment. (*See* PAC ¶¶ 106–55.) Because of Plaintiff's *pro se* status at the time of the prior dismissal of these claims and because the Court did not explain its decision in detail, the Court decides Plaintiff's claims in this Memorandum and Order.

airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention." *King*, 284 F.3d at 357 (citing *Tseng*, 522 U.S. at 174–76).

"[T]he Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Like the Warsaw Convention, the Montreal Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, Art. 1.1; *see also id.*, Art. 29 ("In the carriage of passengers . . . any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention."). The Montreal Convention "still retains many of [the] original provisions and terms" of the Warsaw Convention, "and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention." *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 205 (E.D.N.Y. 2012).

Both treaties have the same preemptive effect on personal injury actions under the local laws of signatory countries. *See Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) ("[T]he preemptive effect is identical regardless of whether the Montreal Convention or the Warsaw Convention . . . applies; thus, the Court need not decide which Convention controls."), *aff'd*, 194 F. App'x 5 (2d Cir. 2006). Under the scheme provided by the Montreal/Warsaw Conventions, passengers are "denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all." *King*, 284 F.3d at 357; *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 303 (E.D.N.Y. 2013) ("Because the Montreal Convention governs the instant case, and the Convention preempts state law claims, it is the only source of

liability for [d]efendant."), *aff'd*, 578 F. App'x 51 (2d Cir. 2014); *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 362–63 (E.D.N.Y. 2012) ("The remedy the Convention provides against international air carriers and their agents is exclusive."); Montreal Convention Art. 29 ("In the carriage of passengers, baggage and cargo, *any action for damages, however founded,* whether under this Convention or in contract or in tort or otherwise, *can only be brought subject to the conditions and such limits of liability as are set out in this Convention* without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights." (emphasis added)).

In the PAC, Plaintiff seeks to assert claims under section 1983 and under state law for battery, intentional infliction of emotional distress, false arrest, and false imprisonment. (*See* PAC ¶¶ 106–55.) However, any such amendment would be futile as these claims are preempted by the Montreal/Warsaw Conventions. *See Sanches-Naek v. TAP Portugal, Inc.*, 260 F. Supp. 3d 185, 192 (D. Conn. 2017) ("The Second Circuit has held that federal civil rights and discrimination claims, such as those brought under Section 1981 or Section 1983, are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope."); *Glassman-Blanco v. Delta Airlines, Inc.*, No. 13-CV-4287, 2016 WL 1171611, at *2 (E.D.N.Y. Mar. 25, 2016) (adopting report and recommendation regarding allegations that plaintiff was "falsely accused of smoking and threatened with arrest by two flight attendants" and finding "[t]he five common law tort claims and the claim alleging a civil rights violation pursuant to 42 U.S.C. § 1983 [were] each preempted by the Montreal Convention"); *Kruger*, 976 F. Supp. 2d at 303 (finding all state law claims preempted by the Montreal Convention including those for false arrest, intentional infliction of emotional distress, and false imprisonment where claims arose from an incident that occurred while plaintiff was traveling

from India to Newark, New Jersey); *Ginsberg v. Am. Airlines*, No. 09-CV-3226, 2010 WL 3958843, at *4 (S.D.N.Y. Sept. 27, 2010) (finding the plaintiff's claims for false arrest, intentional infliction of emotional distress, assault and battery based on a physical altercation with a flight attendant on board a flight from New York to Turks and Caicos were "preempted, and barred, by the Montreal Convention.").

Plaintiff's reliance on a Ninth Circuit case, *Parver v. JetBlue Airlines Corporation*, 649 F. App'x 539 (9th Cir. 2016), to support his assertion that although the "Federal Aviation Act (FAA) and related regulations . . . mak[e] it illegal to interfere with flight crew . . . they do not amount to 'pervasive' regulations of passenger management with respect to claimed intentional torts alleging injury from the misuse of authority," (Pl. Renewed Mot. 2 n.2), is unpersuasive as *Parver* is distinguishable. There, the Ninth Circuit ruled on the applicability of the FAA and related regulations (neither of which are at issue in this case) to Nevada state law tort claims brought for injuries incurred during a *cross-country* flight. *See Parver*, 649 F. App'x at 541. As discussed above, the law in the Second Circuit is clear that the Montreal/Warsaw Conventions govern *international* flights like the one at issue in this case. *See Kruger*, 976 F. Supp. 2d at 301 ("The Montreal Convention applies to personal injuries involving international flights. For the Montreal Convention to apply, an accident must take place on the airplane or in the course of embarking or disembarking.") Accordingly, because the actions forming the basis of Plaintiff's claims took place on the Flight from Mexico to Florida, Plaintiff's claims are preempted by the Warsaw Convention.

## ii. Plaintiff cannot state a section 1983 claim

Moreover, even if the Montreal/Warsaw Conventions do not preempt Plaintiff's proposed section 1983 claim, the PAC nevertheless fails to state a section 1983 claim because Plaintiff's allegations do not satisfy the under-color-of-state-law element of a section 1983 claim.

"To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted); *see also Azkour v. Bowery Residents Comm., Inc.*, 646 F. App'x 40, 41 (2d Cir. 2016) (affirming dismissal of a section 1983 claim because the defendant was a private entity, not a state actor); *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263–69 (2d Cir. 2014) (affirming dismissal of a section 1983 claim because the plaintiff failed to prove that the defendant's actions were state actions); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [her] constitutional rights have been violated must first establish that the challenged conduct constitutes state action."); *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (finding that in order to maintain a section 1983 action, a plaintiff must allege that the conduct complained of was "committed by a person acting under color of state law"); *Sanches–Naek*, 260 F. Supp. 3d at 192 n.1 ("Even if the Montreal Convention did not preclude

such claims, Section 1983 claims also cannot be brought against TAP because, as an airline, TAP is not a state actor.").

The conduct of a nominally private entity may be attributed to the state, satisfying the state action requirement, if:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)); *see also Amid v. Chase*, 720 F. App'x 6, 11 (2d Cir. 2017) (noting the "compulsion test," "close nexus test," and "public function test" as the "three ways" a plaintiff can demonstrate that a private entity acted under color of state law); *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) ("The question is whether the private actor's conduct has sufficiently received the imprimatur of the State so as to render it an action of the State for purposes of § 1983." (citation and internal quotation marks omitted)). Each of the three avenues requires a fact-specific inquiry into the challenged conduct, and in order to find state action, a court must determine that the specific actions of which a plaintiff complains can be fairly deemed to be that of the state. *See Amid*, 720 F. App'x at 11 (dismissing plaintiff's section 1983 claim against a private hospital for plaintiff's involuntary commitment to the hospital under the compulsion test); *Grogan*, 768 F.3d at 265 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (1978)) (examining public function test and noting that the function performed by the private entity must have historically been "an exclusive prerogative" of the state); *Betts v. Shearman*, 751 F.3d 78, 85–86 (2d Cir. 2014) (applying joint action test and dismissing plaintiff's section 1983 claim that

"the arresting officers shared a common goal of violating [the plaintiff's] rights" because it "boil[ed] down to the fact that he was arrested upon the false accusation of assault made against him by a private citizen to the police"); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491–92 (2d Cir. 2009) (examining joint action test and noting that state action cannot be premised solely on subjection to state regulation, funding, licensing or even state creation); *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 349–50 (E.D.N.Y. 2013) (examining compulsion test).

Plaintiff has not alleged any facts from which the Court could infer that Defendants are state actors under any of these tests, and *Blythe v. Southwest Airlines Co.mpany*, 383 F. App'x 766 (10th Cir. 2010), cited by Plaintiff, (Pl. Renewed Mot. 2 n.1), supports the conclusion that Defendants are not state actors.  In *Blythe*, the Tenth Circuit affirmed the district court's decision denying the plaintiff's motion for leave to amend the complaint and granting the defendant's motion to dismiss on the ground that the plaintiff had not "alleged any facts to show a violation of her federal constitutional or statutory rights" because it was "clear that Southwest Airlines and its stewardess are private, not state, actors."  *Id.* at 769.

### iii.  Plaintiff's proposed common law tort claims are time-barred

In addition, even if Plaintiff's proposed common law tort claims for battery, intentional infliction of emotional distress, false arrest, and false imprisonment are not preempted by the Montreal/Warsaw Conventions, any amendment would nevertheless be futile because the claims are time-barred.

## 1. Choice of law

Because Plaintiff alleges that the injuries giving rise to his common law tort claims occurred outside of New York state, the Court must determine whether to apply New York law. [9]

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); and then citing *Colgate Palmolive Co. v. S/S Dart Can.*, 724 F.2d 313, 316 (2d Cir. 1983)); *see also Access 4 All Inc. v. Trump Int'l Hotel & Tower Condo.*, No. 04-CV-7497, 2007 WL 633951, at *3 (S.D.N.Y. Feb. 26, 2007) (collecting cases); *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 436 n.3 (S.D.N.Y. 2001) ("In a federal action where a federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." (citing *Rogers*, 875 F.2d at 1002). "New York courts confronted with a choice of law issue in torts conduct an 'interest analysis,' assessing which of the competing jurisdictions has the greatest interest in seeing its law applied to the matter at issue." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005) (quoting *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994)). The Second Circuit has held that pursuant to New York's "borrowing statute," section 202 of the New York Civil Practice Law ("CPLR § 202"), the "interest analysis does not apply to statutes of limitations." *Dagliano v. Eli Lilly,*

---

[9] Both parties relied on New York case law to support their arguments. (*See, e.g.*, PAC ¶¶ 135–55 (citing to New York state court decisions applying New York law to support proposed common law claims); Defs. Opp'n 3 (citing N.Y. C.P.L.R. § 215(3) to argue Plaintiff's claims for false arrest, false imprisonment, and intentional infliction of emotional distress are time-barred in addition to being preempted by the Montreal/Warsaw Conventions).)

*Pharm. Drug Co.*, 538 F. App'x 110, 111 (2d. Cir. 2013); *cf. Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) ("Under New York law, we apply the rules of decision that are considered 'substantive,' including statutes of limitation." (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). CPLR § 202 "provides that for causes accruing in another state, non-resident plaintiffs will be barred from instituting suit if they are barred by the statute of limitations of either jurisdiction."[10] *Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 424 F.2d 427, 428 (2d Cir. 1970); *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, 717 F. App'x 35, 37 & n.1 (2d Cir. 2017) ("New York's 'borrowing statute,' C.P.L.R. § 202, dictates that 'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued.'" (citing *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998). "New York residents, however, will be affected only by the New York limitations period," *id.*, and "the borrowing statue has no relevance," *Baker v. Porex Corp.*, No. 16-CV-3422, 2018 WL 1440311, at * 4 (E.D.N.Y. Mar. 22, 2018) (first quoting *Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 120 (E.D.N.Y. 2013); and then quoting *Braniff Airways, Inc.*, 424 F.2d at 428); *McCarthy v. Bristol Labs.*, 449 N.Y.S.2d 280, 283 (2nd Dep't 1982) ("The timeliness of an action brought in New York by a resident of the State upon a

---

[10] CPLR § 202 provides in relevant part:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (McKinney 1962).

cause of action which accrued elsewhere is governed by applicable New York Statute of Limitations and the New York 'borrowing statute' is inapplicable.").

Because Plaintiff is a resident of New York, his claims are governed by New York law and the Court must apply New York's statute of limitations. *See Baker*, 2018 WL 1440311, at *5 (finding plaintiff's claims governed by New York's statute of limitations because plaintiff was "and ha[d] been domiciled in New York" for approximately ten years before commencing the action); *Crist v. Adduci*, No. 87-CV-5714, 1988 WL 48681, at *2 (S.D.N.Y. May 10, 1988) ("[A]s the plaintiff is a resident of New York, New York's statute of limitations for negligence must be applied." (citing *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 801 (E.D.N.Y. 1984)); *see also Braniff Airways, Inc.*, 424 F.2d at 428–30 (applying New York's statute of limitations because plaintiffs were New York residents and finding plaintiffs' claims related to a plane crash that occurred in Florida were time-barred).

## 2. Statute of limitations

Under New York law, a one-year statute of limitations applies to each of the common law tort claims alleged in the PAC — battery, intentional infliction of emotional distress, false arrest, and false imprisonment. *See* N.Y. C.P.L.R. § 215 ("The following actions shall be commenced within one year . . . an action to recover damages for assault, battery, [and] false imprisonment."); *see also Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (finding "state-law claims for false arrest, false imprisonment, and assault and battery" were all "barred by the applicable one-year statute of limitations" pursuant to N.Y. C.P.L.R. § 215(3)); *Mejia v. Davis*, No. 16-CV-9706, 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8, 2018) ("Under New York law, the statute of limitations for intentional torts, including false arrest . . . is one year." (citing N.Y. C.P.L.R. § 215(3)); *TADCO Const. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d

253, 273 (E.D.N.Y. 2010) ("New York's one-year statute of limitations does indeed govern

claims for false arrest, malicious prosecution and abuse of process." (citing N.Y. C.P.L.R. §

215(3)); N.Y. C.P.L.R. § 215 Commentary ("A cause of action for the intentional infliction of

emotional distress is governed by the one-year period of limitations in CPLR 215(3)." (citations

omitted)).

Plaintiff's proposed claim for battery accrued on March 22, 2016, the date Plaintiff

alleges JetBlue employees physically restrained and attacked him during the Flight.  *See Allen*,

665 F. App'x at 13 (finding plaintiff's state law claims for assault and battery accrued and the

one-year statute of limitations began to run on date of the alleged illegal search, arrest, and

seizure).

As to the accrual date for Plaintiff's intentional infliction of emotional distress claim,

although courts in the Second Circuit differ as to when such claims accrue — either at the time

of the activity causing the distress or at the time of the last "actionable act," Plaintiff's claim is

time-barred using either accrual date.  At the earliest, Plaintiff's claim accrued on March 22,

2016, the date of the alleged aggressive contact by Defendants and the onset of Plaintiff's alleged

emotional injuries, s*ee Mercano v. City of New York*, No. 15-CV-3544, 2017 WL 1969676, at *4

(S.D.N.Y. May 12, 2017) ("[Intentional infliction of emotional distress] claims, based on harm

allegedly stemming from an assault, accrue on the date of the alleged assault."), or at the latest,

when Plaintiff was released from custody in February of 2017,[11] *see Bagget v. Town of Lloyd*,

---

[11]  Some courts have held that a claim of intentional infliction of emotional distress
accrues on the date of arrest and others have held that the claim accrues at the time of the last
"actionable act" triggering the emotional distress.  *Compare Covington v. City of New York*, No.
98-CV-1285, 1999 WL 739910, at *5 (S.D.N.Y. Sept. 22, 1999) (intentional infliction of
emotional distress claim accrued on date of arrest), *with Llerando–Phipps v. City of New York*,
390 F.Supp.2d 372, 384 (S.D.N.Y. 2005) (intentional infliction of emotional distress claim

No. 10-CV-0977, 2011 WL 4565865, at *5 (N.D.N.Y. Sept. 29, 2011) (noting "[a]t the latest, . . . even under a theory of a continuing tort, the date of accrual for [plaintiff's intentional infliction of emotional distress] claim would have been . . . , when [p]laintiff was released from prison" and finding plaintiff's claim time-barred because he "did not file his Complaint until over a year after that date"), both of which occurred more than a year prior to Plaintiff commencing this action.

Plaintiff's proposed state law claims of false arrest and false imprisonment accrued on February 17, 2017, the date of Plaintiff's release from custody following his criminal trial in Florida. *See Allen*, 665 F. App'x at 13 (finding plaintiff's state law "false arrest and false imprisonment claims accrued when he was released from prison" and that the claims were "barred by the applicable one-year statute of limitations" under N.Y. C.P.L.R. § 215(3)); *Mejia*, 2018 WL 333829, at *7 ("In New York, a state claim for false arrest accrues when a plaintiff is released from custody."); *Fahlund v. Nassau Cty.*, 265 F. Supp. 3d 247, 255–56 (E.D.N.Y. 2017) ("N.Y. C.P.L.R. 215 states that the statute of limitations is one year for state law claims for false imprisonment, intentional infliction of emotional distress, and malicious prosecution."); *Molyneaux v. Nassau Cty.*, 209 N.E.2d 286, 286 (N.Y. 1965) (affirming appellate division's

---

accrued when the criminal charges against the plaintiff were dropped because it was the last "actionable act"), *and Fahlund v. Nassau Cty.*, 265 F. Supp. 3d 247, 256 (E.D.N.Y. 2017) (finding "[the p]laintiff's intentional infliction of emotional distress claim against [a defendant] accrued when the criminal charges against [the plaintiff] were dismissed because he was allegedly subjected to emotional distress throughout the course of the criminal proceedings"). The Court declines to decide the issue as Plaintiff's claim is time-barred regardless of the accrual date of his claim.  Plaintiff filed this action on March 13, 2018, more than one year after both the date he was arrested (March 22, 2016) and the date he was released from custody (February of 2017).

holding that plaintiff's claims for false arrest and false imprisonment accrued when "plaintiff, on

arraignment, on formal complaint, was held for trial on his own recognizance").

Because Plaintiff did not commence this action until March 13, 2018, almost two years

after the date of the Flight and more than a year after his release from custody, Plaintiff's

proposed claims for battery, intentional infliction of emotional distress, and false

arrest/imprisonment are time-barred and amendment is therefore futile as to these claims.[12] *See*

*Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) ("Courts will find 'good reason' to deny

a request for leave to amend pursuant to Rule 15 where the proposed amendment is futile

because, for example, it fails to state a viable legal claim or is time-barred."); *see also Jordan*, 91

F. Supp. 3d at 510 (finding that granting *pro se* plaintiff's proposed amendment would be futile

where the governing statute lacked a private cause of action for plaintiff's claims and other

claims were time-barred).

### iv. The ACAA does not provide a private cause of action for Plaintiff's proposed negligent training claim

Plaintiff seeks to assert a negligent training claim pursuant to the Department of

Transportation's rule defining the rights of passengers and the obligations of airlines under the

ACAA, (PAC ¶¶ 125–26 (citing Nondiscrimination and Access to Services and Information, 14

---

[12] Plaintiff alleges that his criminal prosecution in the Middle District of Florida was brought against him by false or misleading means and therefore the period between the commencement of the criminal prosecution on March 22, 2016 and the return of his passport to him on May 10, 2017 "tolled the statute of limitation for the causes of action asserted [in the PAC] to [the] extent any of the claims are time-barred based on the duration of time and not the overlapping criminal prosecution." (Pl. Renewed Mot. 2.) The Court construes Plaintiff's argument to assert that the statutes of limitation for his proposed false arrest and false imprisonment claims should be equitably tolled from the beginning of the criminal prosecution until the return of his passport to him on May 10, 2017. However, Plaintiff provides no legal or factual support for this contention. To the extent Plaintiff seeks to argue that he was somehow confined until the return of his passport, Plaintiff cites no law in support of his argument.

C.F.R. §§ 382.141(a)(1) and (a)(2))), but any such claim would be futile because the ACAA does not provide for a private cause of action.

The ACAA "prohibits both U.S. and foreign carriers from discriminating against passengers on the basis of disability." 14 C.F.R. § 382.1. On April 27, 2018, the Court dismissed Plaintiff's negligent training claim "pursuant to *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011), which held that there are no private causes of action under the [ACAA]." (Min. Order dated Apr. 27, 2018.)

In support of his proposed amendment to add this claim, Plaintiff asserts that the PAC "clarifies and organizes the factual allegations and claims first asserted in the original complaint[,] now with the benefit of discovery," but does not otherwise provide any further explanation as to the plausibility of the negligent training claim in light of the Second Circuit's decision in *Lopez*. (Pl. Renewed Mot. 3.) Plaintiff provides no contrary case law and the Court is not aware of any. Accordingly, because there is no private cause of action under the ACAA, any amendment to add a claim under the ACAA for negligent training would be futile. *See Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1229 (9th Cir. 2018) ("[T]he ACAA's legislative history is insufficient to overcome the strong suggestion that the statute's remedial scheme forecloses an implied private cause of action."); *Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) ("[A]lthough the ACAA prohibits airlines from discriminating on the basis of disability, it 'does not expressly provide a right to sue the air carrier.'" (citing *Lopez*, 662 F.3d at 597)); *Doe v. U.S. Sec. of Transp.*, No. 17-CV-7868, 2018 WL 6411277, at *13 (S.D.N.Y. Dec. 4, 2018) ("As the Federal [d]efendants point out, and [p]laintiffs do not refute, the ACAA does not create a private right of action." (citing *Lopez*, 662 F.3d at 597)); *Morgan v. Virgin Atlantic Airways*, No. 14-CV-819, 2015 WL 7283182, at *3 (N.D.N.Y. Nov. 17, 2015)

("The ACAA does not explicitly provide for a private right of action, and the Second Circuit has declined to imply one."); *see also Jordan*, 91 F. Supp. 3d at 510 (finding proposed amendment would be futile where "better pleading [would] not cure the defect" and the governing statute lacked a private cause of action for some of plaintiff's claims).

Having liberally construed the claims Plaintiff seeks to assert in the PAC, the Court finds that the proposed amendment is futile because the PAC fails to plausibly state any claim that would survive a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[13] Accordingly, the Court denies Plaintiff's motion to amend the Complaint.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion to amend the Complaint.

Dated: January 30, 2020
       Brooklyn, New York

SO ORDERED:

                                            _____s/ MKB_____
                                            MARGO K. BRODIE
                                            United States District Judge

---

[13] Plaintiff's claim for bodily injury due to negligence under the Montreal/Warsaw Conventions and his related claims for psychological injuries and vicarious liability will proceed as they are not the subject of this current motion.